# Exhibit O

STATEMENT OF WORK NO. 3 – CRED EARN

**THIS STATEMENT OF WORK NO. 3 – CRED EARN SERVICES** ("**SOW #3**") is issued pursuant to and governed by that certain Master Services Agreement dated July 13, 2018 ("**MSA**") between Uphold HQ, Inc., a South Carolina corporation ("**Provider**") and Cred LLC (f/k/a Libra Credit LLC), a Delaware limited liability company ("**Customer**"), and describes Provider's arrangement for the work and services, with reference to Exhibit A attached hereto (the "**Cred Earn Offering**").

1. **Scope of Work**. The scope of services to be performed by Provider under this SOW #3 shall be set forth below and in Exhibit A, attached hereto. All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the MSA. In the event of any conflict between this SOW #3 and the MSA, the terms of the SOW #3 will govern and control, but only for the work and services performed under this SOW #3.

2. **Compensation**. The compensation payable by Customer to Provider shall be set forth in the following fee schedule ("Fees"):

| Services | Service Fees |
|---|---|
| **Cred Earn - Existing Uphold Members with existing funds available on Uphold Platform** | **The greater of (a) 2% of total credit extended by End Users by funding Cred Earn Accounts via Uphold Platform, or (b) the historical % yield on the assets committed to Cred Earn Accounts via Uphold Platform*** |
| **Cred Earn - New Uphold Members or Existing Uphold Members with newly added funds equal to the amount of credit extended to Cred Earn** | **2% of total credit extended by End Users by funding Cred Earn Accounts via Uphold Platform.** |

The following fees apply specifically for the Cred Earn program prior to the launch of Cred Borrow. Uphold and Cred plan to launch an Uphold Borrow program and a new fee schedule for Cred Earn will be agreed to and applied via an SOW specific to Cred Borrow.

*Uphold will calculate the average monthly revenue yield on the assets committed by the Uphold user based on the immediately preceding time period equal to the term of the loan (or such shorter period if the End User has not been a Member for that period of time), and invoice Cred on a rolling quarterly basis for the average monthly yield per month for the duration of the loan term (including any renewals or roll-overs). Uphold and Customer agree to collaborate on this data analysis to optimize the Cred Earn specifications (e.g., deposit amount limits) in order to maximize mutual benefit.

3. **Customer Obligations.** Customer shall comply with all its obligations as set forth in Exhibit A, attached hereto.

4. **Term; Work Schedule and Milestones**. The term of this SOW #3 shall commence upon execution (the "**SOW #3 Effective Date**") and is effective for thirty-six (36) months, provided that Fees for loans extending beyond this period shall continue to be due according to the terms of this SOW. This SOW #3 shall automatically renew for successive twelve (12) month terms unless Customer provides Provider at least thirty (30) days' notice before the next renewal term that it does not wish to renew this SOW #3.

5. **Project Managers**. The project manager designated by Provider for this SOW #3 is Rui "Penso" Silva. The project manager designated by Customer for this SOW #3 is Maxim Rokhline.

6. **Legal Terms and Conditions**. This SOW #3 and the MSA constitute the entire agreement between Provider and Customer with respect to the subject matter of this SOW #3 and the Specifications. This SOW #3 may not be amended or modified except by a written document signed by both parties and made in accordance with the MSA.

**IN WITNESS WHEREOF**, the parties hereto have executed this SOW #3 to be effective as of the SOW #3 Effective Date.

| **CUSTOMER**: | **PROVIDER**: |
|---|---|
| Cred LLC (f/k/a Libra Credit LLC) <br> a Delaware limited liability company | Uphold HQ, Inc. <br> a South Carolina corporation |
| By: *Dan Schatt* <br> Name: Dan Schatt <br> Title: President <br> Date: January 16, 2019 | By: *[signature]* <br> Name: Robin O'Connell <br> Title: CRO <br> Date: January 16, 2019 |
| **Notices should be addressed to:** | **Notices should be addressed to:** |
| Cred LLC <br> 2121 South El Camino Real <br> San Mateo, CA 94403 <br> Attn: Dan Schatt <br> E-Mail: dan@mycred.io | Uphold HQ, Inc. <br> 6 W. 18th St., 3rd Floor <br> New York, NY 10011 <br> Attn: Ben Sherwin <br> E-Mail: legal@uphold.com |

**STATEMENT OF WORK NO. 3 – CRED EARN – EXHIBIT A**

**CRED EARN OFFERING**

Provider shall provide End Users (defined below) who are verified members of both Provider's and Customer's respective platforms the opportunity to participate in the "Cred Earn" program as further described below (the "Cred Earn Offering").

1. **Description of Cred Earn Offering**. Customer will offer to certain members of the Uphold Platform ("Members") that are also qualifying end users of Cred ("End Users") the opportunity to receive interest ("Interest") based on such End User's extension of a loan of certain cryptocurrency assets or fiat currency assets to Customer (the "Cred Earn Offering"). The Cred Earn Offering shall only be made to Members who are not U.S. Persons (as such term is defined in 17 CFR 230.902(k)), and shall not be offered to U.S. Persons without the prior written approval of Provider. Customer agrees and acknowledges that Provider shall have no obligation to offer the Cred Earn Offering to Members that are not End Users. Interest and repayment of principal will be made available to End Users via such End User's Uphold account in good standing at the direction of Customer. The Cred Earn Offering is further described in the "Cred Earn: Product Requirements" documentation attached hereto as Appendix 1.

    1.1. **KYC**. Provider represents and warrants that each Member has passed its "know your customer" due diligence ("KYC") requirements to be a qualified user of the Uphold Platform. Customer represents and warrants that each End User has passed its KYC requirements to be a qualified user of the Cred Earn Offering. Customer will be responsible for performing KYC on all End Users who wish to participate in the Cred Earn Offering. Customer shall not be entitled to rely on KYC verification provided by Provider, though both Provider and Customer agree that they may share KYC information with each other, subject to applicable privacy laws and any required End User consents. Each of Provider and Customer represent and warrant that their KYC procedures are sufficient to comply with applicable law, including relevant fair lending and sanctions programs.

    1.2. **Restrictions**. Each party will notify the other in writing of all jurisdictions in which it is restricted from offering the Cred Earn Offering to End Users, and will promptly notify the other of any updates during the Term.

2. **Customer's Obligations**.

    2.1. **Obligations with respect to End Users**. Customer shall be obligated to, and shall be solely responsible for:

        2.1.1. setting all requirements necessary for an End User to participate in the Cred Earn Offering, and all terms of the Cred Earn Offering (the "End User Agreement", the initial version of which is attached hereto as Appendix 2) including any minimum required funding of a dedicated account ("Cred Earn Account") or any minimum time periods;

2.1.2. setting the rate of Interest offered to each End User, and the criteria by which such rate may be changed;

2.1.3. return of principal and payment of Interest to participating End Users at the agreed upon rates;

2.1.4. servicing End Users as part of the Cred Earn Offering, including setting and notifying End Users of all terms of the Cred Earn Offering and any Interest offered to them thereunder (which may be provided online via the Uphold Platform in addition to other formats where permitted by law); providing End Users with account statements as required by law or more frequently as agreed between Customer and End Users; fielding, managing and responding to all questions regarding Customer's KYC process, Cred Earn Offering requirements, and Interest rates. Provider shall field, manage and respond to all questions from End Users directly relating to the Uphold Platform. Each party shall promptly refer End Users (or promptly refer any received questions) initially fielded by one party that are properly directed to the other; and

2.1.5. ensuring the Cred Earn Offering is made in compliance with applicable law.

2.2. **Customer Covenants and Agreements**. Customer covenants and agrees that:

2.2.1. Customer will not change its requirements under the Cred Earn Offering or the End User Agreement without the prior written consent of Provider;

2.2.2. all risk of loss of principal loaned by Customer from End Users' Accounts shall be borne by Customer; and

2.2.3. it will comply with all applicable laws, rules and regulations pertaining to its operations and in connection with its performance of its obligations hereunder in each jurisdiction in which the Cred Earn Offering will be offered.

3. **Additional Representations and Warranties; Indemnity**. In addition to the representations and warranties set forth in the MSA, Customer hereby represents and warrants to Provider that: (i) it has such registrations and licenses to enable it to perform its obligations under this SOW in each jurisdiction in which the Cred Earn Offering will be offered, and it will make any required filings or disclosures required in a timely fashion; (ii) there is no regulatory proceeding pending or threatened that could reasonably be expected to have a material adverse effect on the performance of Customer's obligations hereunder; (iii) it is solvent and has sufficient capital (or immediately available liquid access thereto) to perform its obligations under this SOW and make the Cred Earn Offering available to End Users as contemplated herein; and (iv) it is the owner of its Marks and has the right, power and authority to license to Provider the use of the its Marks in connection with the Cred Earn Offering. Customer shall indemnify, defend and hold harmless Provider and its subsidiaries, officers, directors, employees, agents and representatives, as applicable, from and against all claims claims, losses, liabilities, damages, costs and expenses (including, without limitation, reasonable attorneys' fees) arising from a claim, suit or proceeding brought against such party by a third

party arising out of or related to (a) a breach or alleged breach of the representations and warranties set forth herein, or (b) fraud of any End Users.

4. **Fees**. All Fees with respect to an individual End User shall be paid within thirty (30) days of the end of the month that is every three (3) months from the date principal is loaned by such End User to the date it is returned. For example, if an End User commits assets on a six-month term commencing on February 15, Fees with respect to such assets would be due on June 30 and September 30. All Fees shall be payable in USD or UPUSD. End Users may be directly charged separate fees for transactions (withdrawals, exchanges, transfers, etc.) by Provider pursuant to the Uphold Platform's standard rates.

5. **Suspension**. Provider may temporarily suspend or revoke Customer's access to or use of any portion or all of the Uphold Platform, or suspend or revoke the offering of the Cred Earn Offering to one or more End Users, if Provider reasonably determines or suspects that: (i) there is a threat or attack on the Uphold Platform or other event that may create a risk to the Uphold Platform, any Member, End User, Customer or any other client of Provider, (ii) Customer's or End Users' use of the Uphold Platform disrupts or poses a security risk to the Uphold Platform, any Member, or any other Provider client, (iii) there is an error, defect or bug in any software, data or information provided by Customer, (iv) either Customer or the End Users are using the Uphold Platform for fraudulent or illegal activities, or (v) continued provision of the Uphold Platform, the Cred Earn Offering, or any portion thereof would violate any applicable law, rule or regulation or registration or licensing requirement (collectively, "Service Suspensions"). Provider will provide written notice of any Service Suspension to Customer and provide updates regarding resumption of the Uphold Platform or Cred Earn Offering, as appropriate, following any Service Suspension. Customer will not be entitled to any refund of fees or service credits for any Service Suspension. If any Service Suspension lasts for more than thirty (30) days, either party may terminate this SOW or portion thereof relating to the Service Suspension.

6. **Most Favored Nations.** For a period of six (6) months from the SOW #3 Effective Date, Customer will not make the Cred Earn Offering or any service offering directly competitive with the Cred Earn Offering utilizing a third party to perform services to be provided by Provider hereunder on terms more favorable to such third party than those terms set forth herein. To the extent that Customer does so, the more favorable terms of such third party agreement will automatically be deemed to apply to this SOW #3 as of the date of such other agreement.

7. **Marketing/Promotion**. Customer shall be responsible for the marketing and promotion of the Cred Earn Offering, subject to prior written approval of Provider with respect to the description of the Uphold Platform. Each party hereby grants to the other a limited, revocable, non-exclusive, royalty-free, worldwide license to use its trademarks, service marks, names and logos ("Marks") in a form approved by the Marks' owner for the sole purpose of marketing and promoting the Cred Earn Offering as mutually agreed.

8. **Privacy**. Each party hereby agrees to be bound by a mutually acceptable Data Processing Addendum within thirty days of the SOW #3 Effective Date.

**APPENDICES:**

Appendix 1 – Cred Earn: Product Requirements
Appendix 2 – End User Agreement